```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JOHN GRANGER,<br><br>            Plaintiff,<br><br>      v.<br><br>ACME ABSTRACT COMPANY, ACME<br>ABSTRACT, LLC,<br>ROBERT J. LOHR, II, and<br>RALPH SHICATANO,<br><br>            Defendants. | CIVIL NO. 09-2119(NLH)(KMW)<br><br>**OPINION** |

**APPEARANCES:**
JOHN GRANGER
2669 SHILLINGTON ROAD
SUITE 233
SINKING SPRING, PA 19608

   Appearing *pro se*

MATTHEW GEORGE HAUBER
ROBERT J. LOHR
LOHR & HAUBER, LTD.
1246 WEST CHESTER PIKE
SUITE 312
WEST CHESTER, PA 19382

   Attorneys for defendants

**HILLMAN**, District Judge

   This matter has come before the Court on defendants' motion for summary judgment on plaintiff's claims that defendants violated plaintiff's copyrighted title insurance calculators when they posted the calculators on their website.  For the reasons expressed below, defendants' motion will be granted.

## BACKGROUND

Plaintiff, John Granger, claims that in 2002 he created the "Pennsylvania Title Insurance Calculator" and the "New Jersey Insurance Calculator" for use on the internet, and he registered these works with the U.S. Copyright Office on October 2, 2006. In his complaint, plaintiff contends that in October 2003, defendants Acme Abstract Company and Acme Abstract, LLC,[1] their managing member, defendant Robert J. Lohr II, and their website designer, defendant Ralph Shicatano, infringed on his copyrights when his title insurance calculators were placed on their website, which advertised their title insurance business. In May 2006, plaintiff sent defendants a letter in May 2006 informing them that it had come to his attention that his copyrighted title insurance calculators appeared on their website, and he requested that defendants provide him with a written licensing agreement allowing them to do so. "Silence beyond two weeks shall serve as proof that no written licensing agreement exists" between plaintiff and defendants. (Def. Ex. 1, May 2, 2006, Letter from John Granger to Acme defendants.)

Lohr attempted to contact plaintiff by telephone and email,

---

[1] Both companies ceased operating in 2010 due to poor business and sold all assets in an asset sale. The entities remain registered in New Jersey and Pennsylvania, but neither company has a bank account, employees, or assets, and they are expected to be formally dissolved at the conclusion of this litigation.

but plaintiff never responded back. Defendants removed both calculators from the website by May 8, 2006. After not hearing again from plaintiff for several years, on May 1, 2009, plaintiff served defendants with his instant complaint, claiming copyright infringement and other violations, including tortious interference with prospective economic advantage, fraudulent business practices, and unfair competition. Defendants have moved for summary judgment in their favor on all claims. Plaintiff has opposed defendants' motion.[2]

## DISCUSSION

### A.   Jurisdiction

This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

### B.   Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the

---

[2]During discovery, plaintiff sought sanctions against defendants for spoliation of evidence because they did not maintain, and therefore could not produce, their web server logs. Plaintiff argued that he required those logs to prove his damages that defendants profited by their customers' use of his title insurance calculators. Plaintiff's motion was denied. See Docket No. 63.

moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260

F.3d 228, 232 (3d Civ. 2001).

   **C.**   **Analysis**

      **1.**   *Copyright infringement claims*

A copyright automatically exists the moment copyrightable subject matter is created. See 2 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 7.16[A][1] (explaining that a copyright in a work is created at the same instant that the work itself is created); 17 U.S.C. § 408(a)(2000) ("[R]egistration is not a condition of copyright protection."). Registration is required, however, before a copyright infringement action can be brought in federal court. See 17 U.S.C. §§ 408, 411 and 37 C.F.R. § 202. Moreover, registration, and the timing of registration, is important to a copyright holder's infringement case because it can provide *prima facie* evidence of the validity of the copyright, and shift the burden of proof onto the defendant to prove the invalidity of the copyright, rather than require the plaintiff to first prove its validity. See 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of registration made thereafter shall be within the discretion of the court."); Masquerade Novelty, Inc. v. Unique Industries, Inc., 912 F.2d 663, 667 (3d Cir. 1990) (citation

omitted) ("The presumption flowing from § 410(c) is not an insurmountable one, and merely shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights.").

In this case, plaintiff claims that he holds two valid, registered copyrights in both of the title insurance calculators he created. Plaintiff also claims that he registered his copyrights in 2006, which is within five years of their creation in 2002. Thus, plaintiff contends that his copyrights are presumptively valid, and it is defendants' burden to demonstrate their invalidity, and, if they are valid, that they did not infringe on his rights from 2003 through 2006. Plaintiff further contends that disputed material facts exist as to defendants' proof to support their burden, and, accordingly, summary judgment should be denied.

Defendants contest plaintiff's view of his case on two bases:

(1) Defendants argue that plaintiff created his calculators in 1997, and not in 2002, and, therefore, their registration in 2006 is beyond the five year window. Because he did not register his copyrights within five years of registration, he is not entitled to the presumption of their validity, and he maintains the initial burden of proof to demonstrate that they are valid; and

(2) Defendants also argue that plaintiff's copyrights are not valid because his title insurance calculators are not copyrightable material. Defendants explain that title insurance rates are mandated by the Pennsylvania and New Jersey title insurance rating

6

bureaus, and those entities provide the tables and calculations to determine the proper rates.  Defendants contend that plaintiff's calculators simply use the tables and rates provided by the bureaus, and, thus, just as there is only way to calculate the circumference of a circle, there is only one way to calculate title insurance rates, and plaintiff has not created any original, copyrightable matter.

In reply to defendants' first argument, plaintiff contends that even though he first created the title insurance calculators in 1997, the ones he registered in 2006 were created in 2002 with that year's title insurance rates.  Plaintiff contends that this update to the rates essentially created a new copyright in the updated calculators, and he therefore is entitled to the presumption of his copyrights' validity.

As to defendants' second argument, plaintiff does not dispute that he used the title rate bureaus' published rate tables to create his calculators, or that he cannot hold a copyright in that information.  He argues, however, that (1) "the design of how the calculation is effected in source code is copyrightable," (2) "merely because [plaintiff] did not publish the tables does not preclude [him] from creating a JavaScript or database program that calculates promulgated rates," (3) "the rate tables themselves published in the rate manuals do not contain the equations for the allegedly 'only' way to calculate title insurance rates," and (4)

7

"Plaintiff can establish that [he] independently created the equations for calculating title insurance rates in several databases as well as JavaScript for the Title Insurance Rate Calculators on the Internet."[3]  (Pl. Opp. Br., Docket No. 56 at 17.)

The Court finds that even if plaintiff is entitled to the

---

[3] Plaintiff also argues that the copyrights to his title insurance calculators have been adjudged to be valid by Judge Renée Marie Bumb in an infringement case plaintiff brought against a different title company.  Judge Bumb, however, never made such a finding.  In that case, for the purposes of settlement, defendants conceded liability on plaintiff's infringement claims, and Judge Bumb accordingly granted judgment in plaintiff's favor, awarding him statutory damages in the amount of $2,050.00.  See Granger v. Infinity Title Agency, Inc., Civil Action No. 07-6050 (RMB).

Relatedly, the Court notes that plaintiff has brought at least 28 copyright infringement lawsuits against other title insurance companies in New Jersey, Pennsylvania, and New York.  Neither party here represents that any other court has substantively analyzed the propriety of plaintiff's copyrights.  Indeed, from this Court's cursory review of plaintiff's other cases, most defendants have conceded liability on the infringement claims, which has served to preempt his other state law claims, and entitle plaintiff to minimal statutory damages.  See, e.g., Granger v. Infinity Title, supra; Granger v. Gill Abstract Corp., 566 F. Supp. 2d 323 (S.D.N.Y. 2008); see also 1. 1:09CV02119 (D.N.J.); 2. 2:07CV02701 (E.D. Pa.); 3. 2:12CV01924 (D.N.J.); 4. 2:10CV04627 (D.N.J.);
5. 5:09CV02763 (E.D. Pa.) ; 6. 1:09CV00510 (D.N.J.);
7. 5:10CV04054 (E.D. Pa.); 8. 5:12CV00877 (E.D. Pa.);
9. 5:11CV01514 (E.D. Pa.); 10. 5:10CV03454 (E.D. Pa.);
11. 5:10CV06941 (E.D. Pa.); 12. 5:11CV01449 (E.D. Pa.);
13. 1:07CV03491 (S.D.N.Y.); 14. 2:06CV04449 (E.D. Pa.);
15. 5:10CV04044 (E.D. Pa.); 16. 1:07CV06050 (D.N.J.);
17. 5:11CV01519 (E.D. Pa.); 18. 5:10CV03442 (E.D. Pa.);
19. 5:10CV04338 (E.D. Pa.); 20. 5:10CV03444 (E.D. Pa.);
21. 1:09CV00511 (D.N.J.); 22. 5:12CV00412 (E.D. Pa.);
23. 5:10CV04043 (E.D. Pa.); 24. 1:11CV02060 (D.N.J.);
25. 5:10CV06944 (E.D. Pa.); 26. 2:10CV01016 (W.D. Pa.);
27. 5:10CV04267 (E.D. Pa.); 28. 5:11CV01482 (E.D. Pa.).

presumption that his copyrights are valid,[4] and defendants therefore have the initial burden of proof to challenge the presumption of their validity, defendants have sufficiently demonstrated that plaintiff cannot ultimately prevail on his infringement claims.[5]

The two elements necessary to state a claim for copyright infringement are: 1) ownership of a valid copyright, and 2) copying of constituent elements of the work that are original. Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); Dam Things from Denmark v. Russ Berrie & Co. Inc., 290 F.3d 548, 561 (3d Cir. 2002) (citation omitted). The Third Circuit has instructed that in cases where copyright infringement is at issue,

---

[4] The Court notes that "a claim to copyright is not examined for basic validity before a certificate is issued." Masquerade Novelty, Inc. v. Unique Industries, Inc., 912 F.2d 663, 667 (3d Cir. 1990) (citing H.R. Rep. No. 1476, 94th Cong., 2d Sess. 157, reprinted in 1976 U.S. Code. Cong. & Ad. News 5659, at 5773).

[5] Even with the burden of proof shifted to defendants, the ultimate burden of persuasion still lies with plaintiff. See Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561, 573 (3d Cir. 2003) (quoting Keeler Brass Co. v. Continental Brass Co., 862 F.2d 1063, 1066 (4th Cir. 1988)) ("When a plaintiff successfully creates a presumption, he not only satisfies his burden of going forward but also shifts that burden to the defendant. The defendant then must rebut the presumption to satisfy his burden of going forward. If the defendant fails to introduce sufficient evidence to rebut the presumption, the plaintiff might prevail on the strength of the presumption. When the defendant introduces sufficient rebuttal evidence, however, the fact finder then will consider all of the evidence on the issue. Regardless of these proof schemes, the burden of persuasion normally remains on the plaintiff for his claim throughout the trial.").

a court should first consider whether there has been infringement by comparing the allegedly infringing works against the original work. Dam Things, 290 F.3d at 561. "Copying is proven by showing not only that the defendant had access to a copyrighted work, but also that there are substantial similarities between the two works." Id. (citation omitted).

The Third Circuit has further subdivided the test for "substantial similarity": (1) the opinions of experts may be called upon in determining whether there is sufficient similarity between the works so as to conclude that the alleged infringer "copied" the work; and (2) the fact-finder is to determine whether a "lay-observer" would believe that the copying was of protectible aspects of the copyrighted work. Id. at 562 (citations omitted) (explaining that one court has described this second part of the test as being whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same" (citation omitted)).

"Not all copying, however, is copyright infringement." Feist Publ'ns, 499 U.S. at 361. Even if actual copying is proven, "the fact-finder must decide without the aid of expert testimony, but with the perspective of the 'lay observer,' whether the copying was 'illicit,' or 'an unlawful appropriation' of the copyrighted work." Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 207-08 (3d Cir. 2005) (citations and quotations omitted). "Phrased in an

10

alternative fashion, it must be shown that copying went so far as to constitute improper appropriation, the test being the response of the ordinary lay person." Id. (citations omitted).

In this case, defendants placed title insurance calculators from unknown origin[6] on their website in 2003, where they remained until May 2006, when they received plaintiff's letter indicating that those calculators may be his. Plaintiff claims that he created the JavaScript functions in the rate calculators, and that the JavaScript functions are his "original works of authorship" not found in the public domain.

In order to determine whether defendants copied plaintiff's calculators, and that the copying was of the protectible aspects of the calculators, a jury must compare the JavaScript source code that plaintiff claims he originally created in his calculators with the source code of the calculators found on defendants' website. Plaintiff, however, has failed to provide any evidence to prove that he created original aspects to the title insurance rate

---

[6]The defendants' website designer, defendant Ralph Shicatano, states, "Although I cannot recall exactly on which URL I discovered the code snippet which eventually became the underlying function in presenting the title insurance rates on the Website, I am certain that it was not the commercial website of a specific title or real estate company, but rather a code repository such as JavaScript.com or hotscripts.com, where such code is commonplace. I am also certain that at no time did I remove any copyright information whatsoever from the source code found on the Website, nor did I remove Granger's name from any source in connection with this or any other document." (Docket No. 54-4, ¶¶ 11-12.)

calculations.

To support his contention that he created an original work, plaintiff refers to his certification, wherein he states, "Declarant independently created the equations and functions for the New Jersey and Pennsylvania Title Insurance Calculators" and "Declarant did not copy the exact equations and functions for the New Jersey and Pennsylvania Title Insurance Calculators from either the NJLTIRB or TIRBOP [the rate bureaus'] manuals."  (Docket No. 56 at 58, ¶¶ 12, 13.)  Plaintiff, however, has not supported these statements with any documentary evidence.

A computer program, whether in object code or source code, is a "literary work" and is protected from unauthorized copying, whether from its object or source code version. Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1249 (3d Cir. 1983).  It is a fundamental premise of copyright law, however, that an author can protect only the expression of an idea, but not the idea itself.  See 17 U.S.C. § 102(b); Kay Berry, Inc., 421 F.3d at 208.  This "idea-expression dichotomy" is difficult to apply, especially in the context of computer programs. Tetris Holding, LLC v. Xio Interactive, Inc., --- F. Supp. 2d ---, 2012 WL 1949851, *5 (D.N.J. May 30, 2012) (FLW) (quoting Lotus Dev. Corp. v. Borland Int'l, 49 F.3d 807, 820 (1st Cir. 1995)) ("Applying copyright law to computer programs is like assembling a jigsaw puzzle whose pieces do not quite fit."); id. (citing Melville Nimmer, et al.,

12

Nimmer on Copyright § 2.18[H] ("[A]nalyzing the substantial similarity of computer programs is especially challenging")). As a result, circuit courts have "developed different tests for how to separate unprotectible ideas from protectible expression pertaining to computer software." Id. (explaining the merger doctrine and the "scenes a faire" doctrine).[7]

The primary goal of whatever test a court employs to determine if a computer program is copyrightable and has been infringed is to delineate between the copyrightable expression and the unprotected elements of the program, then evaluate whether there is substantial similarity between such expression in the infringing program. Id. at 8* (discussing the circuit courts' varying approaches, and painstakingly comparing the two programs at issue).

In this case, this Court, and ultimately a jury, cannot undertake the required analysis of plaintiff's title insurance

---

[7]The Tetris court explained:

> Merger exists when an idea and its particular expression become inseparable. Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 209 (3d Cir. 2005) ("In some instances, there may come a point when an author's expression becomes indistinguishable from the idea he seeks to convey, such that the two merge."). . . . "Scènes à faire" (literally meaning a scene that must be done), applies to expression that is so associated with a particular genre, motif, or idea that one is compelled to use such expression.

Tetris Holding, LLC v. Xio Interactive, Inc., --- F. Supp. 2d ---, 2012 WL 1949851, *5 (D.N.J. May 30, 2012) (some citations omitted).

calculators because plaintiff has not provided any description of his original source code and how it is copyrightable under the idea-expression dichotomy.  Moreover, although in receiving his copyright registrations plaintiff was required to deposit "two complete copies or phonorecords of the best edition," plaintiff has not provided those source code materials which purportedly supported his registration application.  See 17 U.S.C. § 408(b)(2) ("[T]he material deposited for registration shall include . . . two complete copies or phonorecords of the best edition.").  Without those materials, it is also impossible to determine whether plaintiff is seeking to enforce a copyright in the same work that he deposited with the Copyright Office.  See Gallup, Inc. v. Kenexa Corp., 149 Fed. Appx. 94, 95 (3d Cir. 2005) (explaining that the registrant must have deposited the source code upon which the infringement suit is based).

   Defendants have demonstrated that plaintiff has not provided any evidence for a "lay observer" jury to consider in determining (1) whether the title insurance calculators contain original, protectible matter, and (2) whether defendants' title insurance calculators copied that protectible matter.  That lack of evidence, coupled with defendants' assertions that it did not copy any original source code attributable to plaintiff, is fatal to plaintiffs' claims.  See Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561, 573 (3d Cir. 2003) (explaining that in copyright law,

14

the ultimate burden of proving independent development by a preponderance of the evidence remains on the plaintiff); <u>Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.</u>, 797 F.2d 1222, 1231-32 (3d Cir. 1986) (citation omitted) ("As it is rarely possible to prove copying through direct evidence, copying may be proved inferentially by showing that the defendant had access to the allegedly infringed copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work."); <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Civ. 2001) ("A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements."). Accordingly, defendants are entitled to summary judgment on plaintiffs' copyright infringement claims.

### 2. *Plaintiff's other claims*

Plaintiff has also alleged that defendants' infringement of his copyrights constituted tortious interference with his prospective economic advantage, a deceptive business practice, and unfair competition under the Lanham Act.  Because plaintiff has not provided sufficient evidence to go to a jury that defendants inappropriately used and profited from the copyrightable aspects of his title insurance calculators, plaintiff's additional claims fail as well.  Accordingly, summary judgment shall be entered in defendants' favor on the remainder of plaintiff's claims.

## **CONCLUSION**

For the reasons expressed above, defendants are entitled to summary judgment on all of plaintiff's claims against them.  An appropriate Order will be entered.


Date: September 27, 2012              s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.